T.C. Memo. 1997-219


UNITED STATES TAX COURT


STEPHEN A. RAYMOND, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SANDRA C. RAYMOND, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 18033-95, 24063-95.          Filed May 8, 1997.


Stephen A. Raymond, pro se in docket No. 18033-95.

Sandra C. Raymond, pro se in docket No. 24063-95.

<u>Melanie Garger</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following with
respect to petitioners' respective Federal income tax for 1991:

| Petitioner | Deficiency | Addition to Tax Sec. 6651(a)(1)[1] | Accuracy-Related Penalty Sec. 6662(a) |
|---|---|---|---|
| Stephen A. Raymond | $13,181 | -- | -- |
| Sandra C. Raymond | 3,964 | $198 | $793 |

The issue remaining for decision is whether certain payments made during 1991 by petitioner Stephen A. Raymond (Mr. Raymond) to petitioner Sandra C. Raymond (Ms. Raymond)[2] constitute alimony within the meaning of section 71(b) that is deductible by Mr. Raymond under section 215(a) and that is includible in the income of Ms. Raymond under section 71(a).  We hold that they do.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petitions in these cases were filed, Mr. Raymond and Ms. Raymond lived separately in Charlestown, Massachusetts, and Carlisle, Massachusetts, respectively.  Mr. Raymond filed his U.S. individual income tax return (return) for 1991 on May 4, 1992, and Ms. Raymond filed her 1991 return on October 26, 1992.

The Raymonds were married on June 14, 1965, and have two children, Sonya and Jessica, who were born on November 12, 1970, and February 27, 1978, respectively.  During 1991, Sonya Raymond,

---

[1]  All section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  We shall sometimes refer to Mr. Raymond and Ms. Raymond as the Raymonds.

who was 20 years old, was a student at Stanford University and Jessica Raymond, who was 13 years old, lived at home with her mother.

On September 12, 1990, Mr. Raymond filed for divorce, and on August 27, 1991, Ms. Raymond counterclaimed for divorce (divorce proceedings). On October 4, 1990, Mr. Raymond, who was represented by J. Walter Freiberg III (Mr. Freiberg), and Ms. Raymond, who was represented by Kathleen Ann Foley (Ms. Foley), entered into a stipulation for temporary support (support stipulation). On October 4, 1990, the Trial Court of the Commonwealth of Massachusetts, Probate and Family Court Department, Middlesex Division (Probate Court), entered a temporary order (temporary order) that incorporated the support stipulation. The temporary order provided in pertinent part:

1. Neither party shall harass or abuse each other or interfere with the personal liberty of each other.

2. The parties shall live apart with the Wife having sole possession of the former marital home.

3. Neither party shall convey or transfer or sell any asset except to pay normal usual obligations.

4. The Husband shall maintain the existing health insurance, dental insurance and life insurance policies.

5. Neither party shall change any designation of beneficiaries on any policies, pension or retirement plans or IRAs.

\* \* \* \* \* \* \*

7. The parties shall be responsible for their own uninsured medical expenses and shall share Jessica & Sonya's uninsured medical expenses equally.

8. The Husband shall give the Wife his net pay less $900.00 every month on the first day of every month commencing November 1, 1990, or thereabouts. This matter will be reviewed January 2, 1991. The Husband shall give the Wife a copy of his payroll advice on the first of every month.

9. Legal custody of Jessica shall be joint, while mother shall have physical custody on a temporary basis, and father shall have full and normal visitation rights; provided, however, that the scheduling of the visitation shall be guided by the advise and counsel of Jessica's mental health professional who shall advise the parties as to the most appropriate parenting schedule; and also provided that Jessica's preferences shall be respected by both parties. Jessica should play a role in selecting the said therapist who shall be chosen and visited within 10 days.

This shall be made into an order of the Court. * * *

During 1991, pursuant to paragraph 8 of the support stipulation that was incorporated into the temporary order, Mr. Raymond made payments in cash to Ms. Raymond that totaled $41,455 (1991 temporary order payments). Those payments constituted approximately 72 percent of the net amount of wages that Mr. Raymond received during 1991 (i.e., approximately 72 percent of his gross wages for that year reduced by Federal and State income taxes and Social Security and Medicare taxes that were withheld). Ms. Raymond used at least a portion of the 1991 temporary order payments to pay for certain expenses of Sonya and Jessica Raymond.

Mr. Raymond and Ms. Raymond anticipated filing a joint return for 1990, and they did not designate in the support stipulation that was incorporated into the temporary order that a portion of the 1991 temporary order payments was alimony and that a portion of such payments was child support. At no time during 1990 or 1991 did the Probate Court conduct a review of the 1991 temporary order payments or take any other action with respect to those payments. Nor did Mr. Raymond and Ms. Raymond enter into a stipulation or agreement during 1990 or 1991 that superseded the support stipulation that was incorporated into the temporary order. However, during September 1991, Mr. Freiberg, Mr. Raymond's attorney, and Robert L. Hernandez (Mr. Hernandez), whom Ms. Raymond employed (in lieu of Ms. Foley) to represent her in the divorce proceedings sometime after the support stipulation was executed, exchanged letters on behalf of their respective clients in an unsuccessful attempt to clarify and modify certain matters relating to that support stipulation.

On April 27, 1992, the Probate Court entered a judgment of divorce nisi relating to Mr. Raymond's claim for divorce and a judgment of divorce nisi relating to Ms. Raymond's counterclaim for divorce. (Those two judgments are referred to collectively as the 1992 divorce judgments.) The 1992 divorce judgments provided in pertinent part:

> Husband is to pay to wife the sum of $2,600.00 per month beginning May 1, 1992 as alimony and child sup-port ($1,000.00 of which is alimony and which shall

terminate on the first to occur: the wife's death or remarriage, husband's death or May 1, 1994 and $1,600.00 per month for child support).

In his return for 1991, Mr. Raymond deducted as alimony the $41,455 in 1991 temporary order payments that he made to Ms. Raymond during that year. In the notice of deficiency (notice) issued to Mr. Raymond for 1991, respondent determined that he was not entitled to that deduction.

In her 1991 return, Ms. Raymond did not include in income any of the 1991 temporary order payments that she received from Mr. Raymond during that year. In the notice issued to Ms. Raymond for 1991, respondent determined that she received alimony of $41,455 that was includible in her income for that year.

## OPINION

Mr. Raymond and Ms. Raymond bear the burden of proving that respondent's determinations in the respective notices are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Ms. Raymond argues that the 1991 temporary order payments are at least in part payments for child support that are not includible in her income for that year. Mr. Raymond argues that the 1991 temporary order payments constitute alimony within the meaning of section 71(b) and that therefore those payments are deductible by him and includible in Ms. Raymond's income pursuant to sections 215(a) and 71(a), respectively. Respondent's position in these cases is that of a stakeholder.

Section 71(b)(1) defines the term "alimony or separate maintenance payment" to mean any cash payment if--

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Section 71(c)(1) provides that section 71(a) generally is not to apply to that part of any payment that the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of children of the payor spouse.  In applying section 71(c)(1), child support generally may not be inferred from intent, surrounding circumstances, or other subjective criteria, see Commissioner v. Lester, 366 U.S. 299, 306 (1961), except as specified in section 71(c)(2).  The exception prescribed in section 71(c)(2) is that if any amount specified in the divorce or separation instrument is to be reduced (1) upon the occurrence of a contingency specified in that instrument relating to a child (e.g., attaining a specified age, marrying, dying, leaving

school, or a similar contingency) or (2) at a time that can clearly be associated with that kind of contingency, an amount equal to the amount of such reduction is to be treated for purposes of section 71(c)(1) as an amount fixed as payable for the support of children of the payor spouse.

On the record before us, we find that the 1991 temporary order payments are alimony or separate maintenance payments within the meaning of section 71(b)(1), and not child support payments within the meaning of section 71(c). We therefore reject Ms. Raymond's position and sustain Mr. Raymond's position with respect to those payments.

Ms. Raymond concedes that the 1991 temporary order payments meet the definition of alimony in section 71(b)(1). Specifically, Ms. Raymond concedes (1) that those payments were received by Ms. Raymond under the temporary order that incorporated the support stipulation, sec. 71(b)(1)(A) and (2)(C); (2) that the temporary order does not designate the 1991 temporary order payments as payments that are not includible in the gross income of Ms. Raymond under section 71(a) and that are not allowable as deductions under section 215(a), sec. 71(b)(1)(B); (3) that Mr. Raymond and Ms. Raymond were not members of the same household at the time the 1991 temporary order payments were made, sec. 71(b)(1)(C); and (4) that Mr. Raymond had no liability to make the 1991 temporary order payments, or to make any payments (in

cash or property) as a substitute for those payments, for any period after the death of Ms. Raymond, sec. 71(b)(1)(D).

Nevertheless, Ms. Raymond takes the position that the 1991 temporary order payments, at least in part, also meet the definition of payments for child support in section 71(c). In support of that position, Ms. Raymond contends: (1) The support stipulation that was incorporated into the temporary order implies that the 1991 temporary order payments are at least in part payments for child support because it mentions the children of the Raymonds by name and acknowledges that certain expenses were to be incurred with respect to those children and that Ms. Raymond was to have physical custody of Jessica Raymond on a temporary basis; (2) Ms. Raymond used all or a portion of the 1991 temporary order payments to support the Raymonds' children; and (3) the 1992 divorce judgments confirm that the 1991 temporary order payments are at least in part payments for child support.[3]

Although the record supports the first two of Ms. Raymonds' contentions, section 71(c)(1) nonetheless requires us to find that the terms of the temporary order that incorporated the

---

[3] Although Ms. Raymond appears to contend on brief that the support stipulation that was incorporated into the temporary order was not a valid, binding agreement, she conceded at the trial of this case that "[the support stipulation that was incorporated into the temporary order] is a binding agreement which I did sign". The Probate Court considered the support stipulation to be a valid, binding agreement which it incorporated into the temporary order that it entered in the Raymonds' divorce proceedings pending a hearing on the merits or until further order of that court.

support stipulation do not fix either in terms of an amount of money or a portion of the 1991 temporary order payments any part of those payments as a sum that is payable for the support of the children of Mr. Raymond.[4]  See Commissioner v. Lester, supra at 306.  Inferences, intent, or other nonspecific designations of payments as child support are not sufficient to override the mandate of section 71(c)(1), see id., except as permitted by section 71(c)(2).  Section 71(c)(2) does not apply here because there is no amount specified in the temporary order that was to be reduced, let alone upon the occurrence of a contingency specified in that order relating to a child of Mr. Raymond or at a time that can clearly be associated with that kind of contingency.  See sec. 71(c)(2).

As for the third contention of Ms. Raymond that the 1992 divorce judgments confirm that the 1991 temporary order payments are at least in part for child support, we find nothing in those

---

[4]  On Apr. 28, 1997, we denied Ms. Raymond's motion to reopen the record in these cases to admit into evidence an order issued by the Probate Court on Nov. 20, 1996 (1996 order) which denied a motion filed with that Court by Ms. Raymond for "Court Definition and Verification" that the 1991 temporary order payments were payments for child support.  Assuming arguendo that the 1996 order were part of the trial record in these cases, it would not have changed our holdings.  In this connection, we note that in dictum in the 1996 order, the Probate Court stated:  "The parties entered into a stipulation which designated such contribution by husband to wife as alimony and child support".  Even if the 1996 order were part of the record herein, we would not be bound by such dictum.  In any event, on the record before us, we have found that the temporary order did not designate that a portion of the 1991 temporary order payments was alimony and that a portion of such payments was child support.

judgments to suggest that the Probate Court was retroactively changing the temporary order so as to designate that the 1991 temporary order payments constitute at least in part child support.[5]

Based on the entire record before us, we find that Ms. Raymond has failed to satisfy her burden of proving that the 1991 temporary order payments were for child support, and not alimony. We further find that Mr. Raymond has satisfied his burden of proving that the 1991 temporary order payments were alimony, and not for child support.  Accordingly, we sustain respondent's determination under section 71(a) with respect to Ms. Raymond, and we reject respondent's determination under section 215(a) with respect to Mr. Raymond.

To reflect the foregoing,

> Decision will be entered for petitioner in docket No. 18033-95.
>
> Decision will be entered under Rule 155 in docket No. 24063-95.

---

[5]  Ms. Raymond relies on, and Mr. Raymond and respondent discuss and distinguish, our Memorandum Opinion in Heller v. Commissioner, T.C. Memo. 1994-463.  The Heller cases were recently remanded in an unpublished disposition of the appeal of those cases by the U.S. Court of Appeals for the Ninth Circuit.  Heller v. Commissioner, 103 F.3d 138 (9th Cir. 1996).  In any event, we find Heller, as well as the other cases on which Ms. Raymond relies to support her position, to be factually distinguishable from the present cases.